IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE BRAMBLE, JENNIFER LYNCH, on behalf of themselves and all others similarly situated<br>v.<br>WAL-MART STORES, INC., et al. | CIVIL ACTION<br>NO. 09-4932 |

O'NEILL, J.                                                                                                              April 11, 2011

## MEMORANDUM

Plaintiffs Andre Bramble and Jennifer Lynch were employed by defendant Wal-Mart Stores, Inc. as Asset Protection Coordinators. Bramble was an APC at a store in Pennsylvania and Lynch was an APC at a store in Massachusetts. On October 27, 2009, plaintiffs filed the instant action alleging that defendant improperly classified and compensated APCs as exempt from overtime pay requirements under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. Plaintiffs seek to assert their claims against defendant in a nationwide collective action on behalf of "similarly situated" APCs pursuant to Section 216(b) of the FLSA.[1] Odis T. Cottrell II, a former APC from Massachusetts, and Ricardo Beltran, a former APC from California, have filed consent forms to opt-in to this action.[2]

---

[1] Similarly situated persons may opt into a suit brought pursuant to FLSA Section 216(b). See Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 62 (E.D. Pa. 2009), citing 29 U.S.C. § 216(b). This type of suit is called a "collective action," and "is distinguished from the opt-out approach utilized in class actions under Fed. R. Civ. P. 23." Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 546 (6th Cir. 2006).

[2] David Rogerson, another former APC from California, also filed a consent form to opt-in to this action. Rogerson was dismissed from the case when he could not be located. Also, on February 17, 2011, following completion of briefing on the present motion for conditional collective certification, plaintiffs filed opt-in consent forms for Michael Krukowski, Brian Otto, Sr., Brian Shoaf and Gina Spadine. Their opt-in forms do not provide any further details about their employment with Wal-Mart (e.g., job title, duration or location) and the parties

Now before me are plaintiffs' motion for conditional collective certification,[3] court-authorized notice and production of names and addresses pursuant to 29 U.S.C. § 216(b) and defendant's opposition thereto. I deny plaintiffs' motion for the reasons that follow.

## I. BACKGROUND

Defendant uniformly classifies APCs as salaried employees exempt from the overtime requirements of the FLSA.[4] Pl.'s Br., Ex. D. at 5-6. Defendant's job descriptions for the APC

---

have not supplied me with any further information about Krikowski, Otto, Shoaf or Spadine.

[3] Plaintiffs seek an order allowing this case to proceed as a collective action on behalf of

> All persons who, during the Class period [(defined as the date three years prior to the date of notice through the present)]: (i) are/were employed as Asset Protection Coordinators with Wal-Mart; (ii) are/were not paid overtime compensation at a rate not less than one and one-half times the regular rate for each hour worked beyond forty (40) during a workweek; and (iii) choose to opt-in to this action . . . .

Pls.' Mot. at ¶ 1. Defendant asserts that the potential opt-in plaintiffs includes at least 5,588 persons from over 3,500 stores throughout the United States. Def.'s Br. at 2.

[4] The FLSA, exempts from this overtime pay requirement "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Exempt administrative employees are defined as employees who are

> (1) [c]ompensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities; (2) [w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). The executive exemption applies to any employee

> (1) [c]ompensated on a salary or fee basis at a rate of not less than

position define the essential functions of an APC as being to:

> [m]onitor compliance with Company policies and procedures as they pertain to assets, food, health safety, and regulatory compliance as well as local, State, and Federal laws[;] [c]onduct internal and external investigations, including the detention of shoplifters[;] [a]nalyze exceptions to monthly P&L, financial and business reports[;] [i]mplement and manage processes to ensure goals are met in the areas of safety, asset protection and compliance[; and] [a]nalyze security measures within a facility or facilities to determine effectiveness and needs.

Pls.' Br., Ex. I, at 5; Ex. J, at 5; Ex. K, at 1; Ex. L, at 1. Plaintiffs contend that all APCs are similarly situated in that they are classified as exempt employees and they share the same core responsibilities. They also assert that all APCs are trained by defendant utilizing uniform methodologies and materials, see, e.g., id., Ex. C, at 131:5-131:19 (deposition of Ron Lance, defendant's 30(b)(6) corporate designee), are evaluated under a standardized set of performance objectives, see, e.g., id., Ex. F, at 96:9-99:8 (deposition of Jennifer E. Donley, defendant's 30(b)(6) corporate designee), and are paid a salary in accordance with a standard pay plan, see, e.g., id., Ex. C, at 188:16-189:13. Plaintiffs note that in carrying out their responsibilities all APCs are required to implement a uniform set of mandatory policies and procedures set forth in

---

> $455 per week . . . exclusive of board, lodging or other facilities; (2) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) [w]ho customarily and regularly directs the work of two or more other employees; and (4) [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).

defendant's "National Priorities" program. See, e.g., id., Ex. C, at 149:13-152:11.[5]

Plaintiffs claim that all APCs are misclassified as exempt employees. They contend that regardless of their classification as exempt employees the responsibilities of APCs are not primarily managerial and that they do "not regularly exercise judgment and discretion regarding matters of significance." Compl. ¶ 21. Plaintiffs contend that "APCs do not hire or fire employees at the retail stores where they work and they do not make recommendations that are given significant weight on such matters." Pls.' Mot. at 10. They contend that APCs "do not serve in a supervisory role for other employees" and that APCs "do not establish retail store policies and procedures regarding asset protection." Id. at 11, 12. Instead, plaintiffs assert that APCs spend the majority of their time conducting audits mandated by the National Priorities Program. See Pls.' Br., Ex. G, 48:21-49:20; Ex. H, 29:17-30:8; Ex. P, 98:13-14; Ex. Q ¶¶ 6-8. Accordingly, plaintiffs argue that defendant improperly classified APCs as exempt employees and that they and other similarly situated APCs were or are not adequately compensated for their hours worked.

In support of their contention that all APCs are misclassified as exempt plaintiffs produce their own deposition testimony, the deposition of Cottrell and the declaration and deposition of Beltran. See Pls.' Br., Ex. G, 299:9-240:9 (deposition testimony of Bramble that he did not have the power to fire, demote, or to authorize pay raises); id., Ex. H, 209:3-210:12 (deposition testimony of Lynch that she did not have the power to grant pay raises, direct APA's work responsibility or to hire, fire, promote or discipline employees); id., Ex. P, 214:16-215:21

---

[5] Defendant notes that the National Priorities operating procedures were replaced in 2010 with its Shrink and Safety Operating Procedures. Def.'s Br. at 8 n.26.

(deposition testimony of Cottrell that he did not have the power to hire, fire, promote or recommend raises); id., Ex. Q, ¶ 10 (Beltran declaration that he "did not have the authority to hire, fire, promote or demote any Asset Protection Associate"); Pls.' Repl. Br., Ex. X, 137:25-136:4 (deposition testimony of Beltran, same). The deposition testimony of Bramble, Lynch, Cottrell and Beltran is largely specific to their own experiences at Wal-Mart. Plaintiffs have produced little evidence to substantiate their assertions that their responsibilities, as performed, were similar to those actually performed by other APCs, either at their stores or at other stores nationwide. Bramble testified only that APCs "all did the same thing. We all had audits to do. Pretty much everything I – I described, I had to do, we all had to do. There wasn't much deviating from the – you know, what we were supposed to do." Pls.' Repl. Br., Ex. U, 114:12-17. Lynch testified that "[e]very APC did the same thing throughout the company," but when asked if she knew "if certain APCs did everything on this job description" she testified that she "couldn't say that, no." Id., Ex. V, 139:1-10. Although Cottrell testified that he had conference calls and meetings with other APCs and that he could email them for assistance if needed, id., Ex. W, 209:4-210-12, his testimony does not include any information to support an inference that the work experiences of other APCs were or are similar to his own experience. Beltran's declaration states only that "I believe my experience at Wal-Mart was typical of other APC's. For example, the APC's I worked alongside with at other stores performed the same type of work as I did and also worked long hours each week." Id., Ex. Q, ¶ 16.

Defendant contends that plaintiffs' alleged experiences as APCs are not reflective of the class of APCs as a whole because their "claims of misclassification rest upon their alleged performance of duties not contained within the APC job description." Def.'s Br. at 2. In support

of its contention that plaintiffs' work experiences are not representative of the work experiences of other APCs, defendant has provided the Court with declarations from twenty-three APCs employed at various stores in Pennsylvania, Massachusetts and California. Id., Ex. E. Many of the declarations submitted by defendant describe in detail the managerial functions that each declarant performs or performed as an APC, including hiring, firing, training, administering performance evaluations. See, e.g., id., Ex. F (summarizing responsibilities of APCs as identified in the APC declarations submitted by defendant ). Defendant also submits declarations from four current or former Regional Asset Protection Managers who oversee defendant's Asset Protection functions within an assigned region, id., Ex. C, declarations from five current or former Market Asset Protection Managers who directly supervise APCs within an assigned market (a subset of a region), id., Ex. D, Tabs 2-6, and the declaration of one store manager, id. Ex. D, Tab 1. These declarations confirm that APCs are generally responsible for programs to ensure shrink reduction, safety, compliance and security. They describe managerial functions ordinarily performed by APCs under their supervision as including hiring, training, supervising and evaluating Asset Protection Associates, managing theft and accident investigations and the development and implementation of strategies to reduce shrink. Defendant further asserts that while all APCs share these same duties "they do not all perform those duties in the same manner, at the same level of involvement, or with the same frequency." Def.'s Br. at 10. Defendant cites to the twenty-three proffered declarations of APCs to highlight variations that may exist between the daily responsibilities of APCs due to factors including variations in store size, geographic region and circumstances unique to individual locations. Id., Ex. G. (summarizing variations in APC experiences based on information in submitted declarations). Defendant's evidence

regarding the ordinary job responsibilities of APCs as including hiring, firing, training, supervising, establishing policies or other tasks that would support defendant's determination to classify the APC position as exempt from the FLSA's overtime pay requirements largely contradicts plaintiffs' assessments of their own job responsibilities.

In further support of its contention that plaintiffs' work experiences are not representative of those of other APCs, defendant also asserts that the Wage and Hour Department of the U.S. Department of Labor "examined the APC job description and policies, investigated the day-to-day duties and responsibilities of the APC position, interviewed numerous APCs, and conducted further follow-up interviews . . . " in conjunction with a 2006 audit of approximately 30 of defendant's stores. Def.'s Br., Ex. M. The Department of Labor concluded that APCs "actually performing the full range of duties contained in the APC position description" would properly qualify for an exemption from the FLSA's overtime provisions. Id.

## II. STANDARD FOR CONDITIONAL CERTIFICATION OF A FLSA COLLECTIVE ACTION

The FLSA requires employers to pay time-and-a-half for employee labor exceeding forty hours per week. 29 U.S.C. § 207. Under 29 U.S.C. § 216(b) employees who believe their right to unpaid overtime compensation has been violated may maintain a collective action on their own behalf and on behalf of all similarly situated employees. Plaintiffs who allege that they are misclassified as exempt from FLSA's overtime pay requirements may seek collective certification. Woodard v. FedEx Freight East, Inc., 250 F.R.D. 178, 191 (M.D. Pa. 2008) ("district courts often conditionally certify misclassification cases"). Collective action treatment affords plaintiffs 'the advantage of lower individual costs to vindicate rights by the pooling of resources.'" Morisky v. Pub. Sev. Elec. and Gas Co., 111 F. Supp. 2d 493, 496 (D.N.J. 2000),

quoting Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989). "'Collective action treatment under § 216(b) [also] reflects a policy in favor of judicial economy by which 'the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.'" Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1269 (M.D. Ala. 2004), quoting Hoffman-La Roche, 493 U.S. at 170.

Courts in the Third Circuit follow a two step procedure in determining whether a plaintiff's claims may proceed as a collective action. Smith v. Sovereign Bancorp, Inc., No. 03-2420, 2003 WL 22701017 (E.D. Pa. Nov. 13, 2003) ("The determination of whether FLSA claimants are 'similarly situated' for the purposes of § 216(b) is a two-step procedure."); Stillman v. Staples, Inc., No. 07-849, 2008 WL 1843998, at *3 (D.N.J. Apr. 22, 2008) ("A collective action has two stages, namely the conditional certification and notice stage and the final certification stage."). "The first step is assessed early in the litigation process when there is minimal evidence and places a relatively light burden on plaintiffs to show that potential opt-in plaintiffs are 'similarly situated.'" Pereira, 261 F.R.D. at 62 (citations omitted). "The second step is usually conducted at the close of class-related discovery and consists of a specific factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate party." Harris v. Healthcare Servs. Grp., Inc., No. 06-2903, 2007 WL 2221411, at *2 (E.D. Pa. July 31, 2007).

The present motion implicates the first step of this analysis. At the first step, I am required to determine whether the proposed collective consists of similarly situated employees to whom notice of the collective action should be sent. Guillen v. Marshalls of MA, Inc., --- F. Supp. 2d ----, 2010 WL 4627851, at *5 (S.D.N.Y. Nov. 16, 2010) (internal quotation and

citations omitted) ("at this preliminary stage, the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated"). The phrase "similarly situated" is not defined in the FLSA, "and neither the United States Supreme Court nor the Court of Appeals for the Third Circuit provide direct guidance on determining whether potential class members are similarly situated." Pereira, 261 F.R.D. at 62. The phrase "contemplates individuals 'employed under the same terms and conditions.'" Craig v. Rite Aid Corp., No. 08-2317, 2009 WL 4723286 (M.D. Pa. Dec. 9, 2009), quoting Woodard v. FedEx Freight East, In., 250 F.R.D. 178, 190-91 (M.D. Pa. 2008). However, "the mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." Colson v. Avnet, Inc., 687 F. Supp. 2d 914, 927 (D. Ariz. 2010). The right to proceed collectively may be foreclosed where "an action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." Basco v. Wal-Mart Stores, Inc., No. 00-3284, 2004 WL 1497709 (E.D. La., Jul. 2, 2004), quoting Burt v. Manville Sales Corp., 116 F.R.D. 276, 277 (D. Colo. 1987).

There is disagreement as to the quantum of proof that plaintiffs must offer in order to establish that they are sufficiently similarly situated with putative opt-in plaintiffs to warrant conditional certification. See Wright v. Lehigh Valley Hosp., No. 10-431, 2010 WL 3363992, at *3 (E.D. Pa. Aug. 24, 2010). I find that plaintiffs must support their request for conditional certification with "a basic or modest factual showing that the proposed recipients of opt-in

notices are similarly situated to the named Plaintiff[s]." Id. "Mere allegations" are not sufficient where, as here, "discovery has commenced, and the parties submit deposition testimony, declarations, and other evidence in support of their respective positions[. A]pplication of the more stringent test is appropriate." Williams v. Owens & Minor, Inc., No. 09-00742, 2009 WL 5812596, (E.D. Pa. Oct. 09, 2009), citing Pereira, 261 F.R.D. 60, 63.

The modest factual showing test is a lenient standard. Morisky v. Pub. Serv. Elec. and Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (citation omitted). Plaintiffs must "provide 'a sufficient factual basis on which a reasonable inference could be made' that potential plaintiffs are similarly situated." Andrako v. United States Steel Corp., No. 07-cv-1629, 2009 WL 2855662, at *3 (W.D. Pa. Sept. 2, 2009), quoting Mueller v. CBS, Inc., 201 F.R.D. 425, 428 (W.D. Pa. 2001). Plaintiffs must "provide some 'modest' evidence, beyond pure speculation, that Defendant's alleged policy affected other employees." Smith, 2003 WL 22701017, at *2 (E.D. Pa. Nov. 13, 2003); see also Holt, 333 F. Supp. 2d at 1270 ("[A] plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions."). Although plaintiffs' burden to establish a right to conditional certification is modest, it is "not nonexistent and the factual showing, even if modest, must still be based on some substance." Guillen, 2010 WL 4627851, at *9; see also Colson, 687 F. Supp. 2d at 929-30 ("Although the burden for certifying a FLSA lawsuit for collective action notification is light, there are limits, and the district court cannot function as a rubber stamp for any and all claims that come its way under this statute."); Bunyan v. Spectrum Brands, Inc., No. 07-0089, 2008 WL 2959932 (S.D. Ill. Jul. 31, 2008) ("the 'modest factual' showing does require at least some minimal support for

Plaintiffs' allegation that they, along with potential plaintiffs, are similarly situated in their job duties and their compensation plan"). In order to "avoid the 'stirring up' of litigation through unwarranted solicitation" conditional certification should be denied where plaintiffs fail to satisfy their burden. White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1318 (M.D. Ala. 2002), quoting Brooks v. BellSouth Telecomm., Inc., 164 F.R.D. 561, 567 (N.D. Ala. 1995); see also Burkhart-Deal v. Citifinancial, Inc., No. 07-1747, 2010 WL 457127, at *5 (W.D. Pa., Feb. 04, 2010) (holding that given the "dearth of evidence" to support plaintiff's claims of substantial similarity to a nationwide class "any court-facilitated notice to a nationwide opt-in class would constitute little more than solicitation on behalf of Plaintiff's cause").

## III. DISCUSSION

I must decide whether plaintiffs have made a modest factual showing that they and other APCs nationwide, the potential members of the collective action plaintiffs seek to assert, are similarly situated. For the purposes of plaintiffs' FLSA misclassification claim, "similarly situated" must be "analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt." Morisky, 111 F. Supp. 2d at 498; see also 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's . . . duties meet the requirements of the regulations" implementing the FLSA.). Plaintiffs argue that they are similarly situated to APCs nationwide because, as APCs they were uniformly classified as exempt from the FLSA's overtime pay requirements, were tasked with similar responsibilities, underwent similar training and were subject to standardized salary and evaluation policies. In contrast, defendant contends that what binds the claims of Bramble,

Lynch, Cottrell and Beltran together is their assertion that they performed non-exempt duties.[6] Plaintiffs do not point to a job description that says that APCs are required to perform non-exempt tasks for a majority of their working hours. "Instead, the Plaintiffs are arguing that as a matter of fact, rather than of formal job description, they are performing non-[exempt] duties for the majority of their working hours." Holt, 333 F. Supp. 2d at 1271; see also Guillen, 2010 WL 4627851, at *6 (denying plaintiff's motion for conditional certification where plaintiff's claim that he spent most of his time performing non-exempt managerial tasks was "very different from an attack on a common formal policy"). "It is only once the Plaintiffs' testimony as to the degree to which other tasks are performed that the application of the exemption becomes questionable." Holt, 333 F. Supp. 2d at 1271.

The deposition testimony of Bramble, Lynch, Cottrell and Beltran and Beltran's declaration provide only limited evidence from which I may conclude that APCs nationwide are similarly situated to plaintiffs with respect to plaintiffs' allegation that the work they perform or performed should not qualify for an exemption to the FLSA's overtime pay requirement. "In spite of the modest evidentiary standard applicable at this stage, courts have not hesitated to deny conditional certification when evidence is lacking." Kronick v. Bebe Stores, Inc., No. 07-4514, 2008 WL 4546368, at *2 (D.N.J. Oct. 2, 2008). The Court in Guillen, 2010 WL 4627851, at *6-

---

[6] Plaintiffs primarily rely on their own declarations and depositions as evidence that all APCs are similarly situated. However, defendant has also presented contrary declarations of APCs who have not consented to sue. "[R]ather than rely merely on the evidence presented by the Plaintiffs, it is appropriate to examine all of the relevant evidence." Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004). I am "not weighing evidence, or accepting the substance of the Declarations submitted by the Defendant over the substance of any testimony submitted by the Plaintiffs." Id. As in Holt, the issues here revolve around whether the day-to-day tasks of APCs are consistent with their designation as exempt. I "must necessarily examine evidence of the job duties actually performed" by APCs. Id.

7, declined to grant conditional certification where plaintiff's showing that he was "similarly situated to the proposed plaintiffs with respect to his allegation that he spent most of his time performing non-managerial tasks" was "extremely thin." The Court found that plaintiff's argument

> boil[ed] down to the proposition that where there is a corporate management structure that applies to all regions of the country – as is likely true for many, if not most companies that operate nationally – any single employee may plausibly assert that employees are similarly situated with respect to that employee's day to day job requirements even if those job activities contravene the company's stated requirements.

Id. at *7. Here, plaintiffs' do not provide even modest evidence beyond their own speculation that "the evidence of the Plaintiff[s'] job duties is [not] merely anecdotal evidence specific to them [and] can be more broadly applied." Holt, 333 F. Supp. 2d at 1272; see also Kronick, 2008 WL 4546368, at *3 (denying motion for conditional certification where "[p]laintiffs assert generalized assumptions and effectively assume a similar situation for themselves and the prospective class"); Armstrong v. Weichert Realtors, No. 05-3120, 2006 WL 1455781, at *1-2 (D.N.J. May 19, 2006) (denying plaintiff's motion for conditional certification where plaintiff presented no specific evidence that others in his position were required to perform unpaid overtime work); cf. Garcia v. Freedom Mtge. Corp., No. 09-2668, 2009 WL 3754070, at *3 (D.N.J. Nov. 2, 2009) (granting conditional certification where plaintiffs' evidence regarding the factual nexus between their situation and that of the proposed class members included affidavits detailing their own experiences and their observations of the experiences of their co-workers).

Further, courts considering claims similar to those of plaintiffs have declined to grant conditional certification where consideration of the propriety of an employer's application of an

exemption to its employees would require an individualized or fact intensive analysis. See Evancho v. Sanofi-Aventis U.S. Inc., No. 07-2266, 2007 WL 4546100, at *5 (D.N.J. Dec. 19, 2007) (declining to grant conditional certification to a proposed collective of pharmaceutical representatives where the evidence submitted by the parties indicated that employee responsibilities "may vary among plaintiffs and potential collective action members"); Aguirre v. SBC Communications, Inc., No. 05-3198, 2007 WL 772756, at *15 (S.D. Tex. Mar. 12, 2007) ("the fact-intensive nature of the exemption analysis" coupled with plaintiffs' acknowledgment that employee duties varied between individuals was sufficient to deny preliminary collective action certification); Forney v. TTX Co., No. 05-6257, 2006 WL 1030194, at *3 (N.D. Ill. Apr. 17, 2006) (declining to grant conditional certification where "certification of a collective action would require determination on whether each potential claimant's qualifications satisfy the regulatory requirements [for a FLSA exemption]. This determination would be fact-intensive and individualized."). Conditional certification of a nationwide collective action is inappropriate where allowing the parties claims to proceed collectively will not provide for "the economy of scale envisioned by the FLSA collective action procedure." Holt, 333 F. Supp. 2d at 1275.

In Holt, the Court denied conditional certification where defendant classified assistant manager and store manager plaintiffs as exempt executive employees and plaintiffs claimed that they were misclassified because they "perform the same tasks as hourly employees, and [ ] the only task which Store Managers can perform and hourly shift supervisors cannot perform is the hiring/recommending of entry level employees." 333 F. Supp. 2d at 1269. The "written job descriptions for Store Managers and Assistant Store Managers contain[ed] many managerial tasks." Id. at 1271. The application of the exemption became questionable only after

considering the plaintiffs' testimony regarding how often they performed non-managerial tasks. Id. As here, the defendant in Holt presented declarations from store managers and assistant managers that were inconsistent with the evidence submitted by the plaintiffs as to whether they primarily performed exempt tasks. Id. at 1274. The Court found that it could not conclude that a nationwide group of Store Managers and Assistant Managers was similarly situated where

> substantial evidence [had] been presented which indicate[d] to [the] court that, if the case were conditionally certified as a collective action at [the first] stage, the court would have to inquire at a second stage as to the daily tasks of each putative collective action member to determine whether they are similarly situated to the persons identified by the Plaintiffs, and then, on the merits, whether they had suffered an FLSA violation because they were not eligible for overtime compensation.

Id. at 1274-75.

Similarly, in Babin v. Stantec, Inc., No. 09-1160, 2010 WL 3363920 (E.D. Pa., Aug. 25, 2010), the Court declined to grant conditional certification under the modest factual showing standard to a proposed class of "designers" alleged to have been misclassified as exempt. In support of his motion, plaintiff supplied notices from three potential opt-in plaintiffs, declarations from two experts purportedly demonstrating that "all designers-regardless of discipline, specialty, training or expertise-perform the same primary duties and functions" and an admission from defendant's corporate designee that all designers perform the same common duties. Id. at *3. Defendant argued that plaintiff was not representative of the class he sought to represent and that there were substantial differences among designers. Id. at *4. The Court found that

> [w]hile designers may share certain general job functions-including preparing or reviewing project designs, drawings, calculations, and documentation-that alone is insufficient to establish that designers

> are similarly situated. Rather, determining whether an employee is properly classified as overtime-exempt as an executive, administrative, or professional employee requires identifying the employee's "primary duty"-not just the employee's generalized job functions-and determining how much time the employee spends performing both exempt and non-exempt work."

Id. at *4

In Mike v. Safeco Insurance Company of America, 274 F. Supp. 2d 216 (D. Conn. 2003), plaintiff was an insurance claims representative who had been classified as an exempt employee under the exemption for administrative employees. Plaintiff claimed that even though his job description listed administrative and non-administrative tasks, he "spent the majority of his time . . . performing non-administrative tasks, and therefore he should not be considered an administrative employee." Id. at 220. The Court denied conditional certification of plaintiff's claims, holding that where plaintiff "spent the balance of his time performing non-administrative functions despite the fact that his job description calls for him to perform some administrative functions," he was effectively challenging his individual treatment, rather than defendant's overarching classification policy. Id. at 221. The Court found that where it "would have to engage in an ad hoc inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to" plaintiff's there was "no way . . . to conclude that resolution of the claims of many plaintiffs at the same time would be sensible." Id.

Although plaintiffs and the putative opt-ins share the same job title and essentially the same job description, an analysis of plaintiffs' claim that APCs are misclassified as exempt would require an individualized inquiry as to whether the tasks in fact performed by each putative collective action member are or were similar to the tasks that plaintiffs claim they performed and which render them more appropriately classified as non-exempt employees.

Based on the sparse evidence submitted to support plaintiffs' contention that all APCs similarly performed non-exempt tasks, I find that plaintiffs have not met their modest burden to proceed collectively with an action on behalf of APCs nationwide. "[L]itigating this case as a collective action would be anything but efficient. The exempt or non-exempt status of potentially [thousands] of employees would need to be determined on . . . an employee-by employee basis." Morisky, 111 F. Supp. 2d at 499. Accordingly, I will deny plaintiffs' motion.

An appropriate Order follows.